IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:21-CR-00434-M-2

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | ORDER |
| ELIZABETH YOUNG, | |
| Defendant. | |

This matter comes before the court on the Defendant's letter, liberally construed as a motion for compassionate release [DE 788], Defendant's counseled memorandum in support of the motion (DE 823), the United States' response in opposition to the motion (DE 833), and Defendant's reply (DE 836). Defendant has also filed a "notice of subsequently decided authority" (DE 842) and a status report with attachments (DE 936). Defendant argues that her prison facility's failure to treat her serious medical conditions increases her risk of experiencing severe complications from COVID-19 and constitutes an extraordinary and compelling reason warranting a sentence reduction. For the reasons that follow, Defendant's motion is denied.

I. **Background**

A. Procedural History

On October 18, 2022, Defendant, who was named as one of nineteen defendants in an 18-count superseding indictment (DE 367), pled guilty to conspiracy to distribute methamphetamine, distribution of methamphetamine, and possession of firearms in the furtherance of drug trafficking. DE 538. On January 30, 2023, the court varied below the guidelines range and sentenced

Defendant to a total term of 132 months in prison (12 months on Counts 1 and 3, and 120 months on Count 4), followed by five years on supervised release. J., DE 668.

Nearly four months later, Defendant filed the present pro se "motion," in which she complains of difficulties in securing a job and spaces in programs she wanted to attend, and delays in obtaining treatment, including medication, for her psychological and physical health conditions. DE 788. Defendant also mentions her eligibility under the First Step Act; thus, reading the document as a whole, the court liberally construed the filing as a request for compassionate release.

In the memorandum supporting her motion, Defendant argues that the BOP is "not providing timely medical care" for her "serious and chronic health conditions, which are likely to affect her mortality, such as obesity, cardiomyopathy, gastrointestinal and esophageal stricture (related to lap band displacement), gynecological abnormalities, substance use disorder, mental health disorders (major depressive disorder and unspecified trauma and stressor related disorder") and co-morbid conditions," such as asthma and migraine headaches. DE 823 at 4-5. Defendant contends that her obesity, cardiomyopathy, asthma, substance use disorder, and mental health disorders can make her more likely to get very sick from COVID-19. She also asserts that her age, lack of prior criminal history, strong network of support, lack of infractions while incarcerated, and desire to continue her education and sobriety demonstrate that she is a low risk for recidivism and a good candidate for release.

The United States filed a response to Defendant's motion on October 10, 2023, arguing that Defendant's medical conditions and the BOP's treatment of (or failure to timely treat) them do not reach the level of "extraordinary and compelling" required to justify a modification under § 3582(c)(1). In addition, the government contends that Defendant's conduct in the underlying criminal activity was significant, her lack of a prior criminal history was acknowledged and

2

considered at sentencing, and her lack of discipline while incarcerated is no more than what is expected of all incarcerated persons and, thus, the factors under 18 U.S.C. § 3553(a)) weigh against reducing Defendant's sentence.

Defendant timely filed a reply brief, arguing that her risk of severe illness from COVID-19 increases with the number of medical conditions she has and that she is more likely to contract the virus in a prison setting. DE 836. Defendant also cites a number of opinions in which courts reduced the sentences of inmates who have experienced little to no, or delayed, treatment by the BOP. *Id.* at 3-5. Further, she asks the court to consider all of her post-sentencing conduct, which it has not yet reviewed, in determining whether to reduce her sentence. Defendant, proceeding pro se, also filed a written "update" to her motion on June 13, 2024, to which she attached additional documents. DE 936. In reaching its determination not to exercise its discretion to reduce Defendant's sentence, the court has considered the parties' arguments and all filed documents.

## II.     Legal Standards

For a motion seeking relief under § 3582(c)(1)(A), a district court in its discretion may reduce a defendant's term of imprisonment if: (1) the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring such motion on the defendant's behalf *or* the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier; and (2) the court finds that extraordinary and compelling reasons warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i);[1] *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). In deciding to reduce a sentence based on extraordinary and compelling reasons, the court must consider the factors set forth in section 3553(a), to the extent applicable,

---

[1] Alternative grounds for a sentence reduction, inapplicable here, are outlined in § 3582(c)(1)(A)(ii) (listing that the defendant be at least seventy years old, served at least thirty years in prison, and have a BOP determination that he is not a danger to the safety of any other person or the community).

3

and determine that a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Kibble*, 992 F.3d 326, 331 (4th Cir.), *cert. denied*, 142 S. Ct. 383, 211 L. Ed. 2d 204 (2021).

In its 2021 manual,[2] the Sentencing Commission outlined a non-exhaustive list of circumstances that constitute extraordinary and compelling reasons for compassionate release. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. n.1(A)-(C) (U.S. Sent'g Comm'n 2021) (hereinafter "U.S.S.G.") (listing terminal illness; a condition from which a defendant is not expected to recover that substantially diminishes his ability to provide self-care within the correctional-facility environment; age 65 or older; and other listed requirements or enumerated family circumstances). Notably, this version of Section 1B1.13 pre-dates the enactment of the First Step Act, which amended Section 3582 to provide defendants with direct access to the courts. Consequently, the Fourth Circuit has found that "[t]he only policy statement that possibly could be 'applicable'" was Section 1B1.13, but that provision, "[b]y its plain terms, . . . does not apply to *defendant-filed* motions under § 3582(c)(1)(A)." *McCoy*, 981 F.3d at 282 (emphasis added); *see id.* at 281 ("What § 3582(c)(1)(A) requires is that sentence reductions be consistent with 'applicable policy statements.' And here, that consistency requirement simply is not implicated, for the threshold reason that there currently exists no 'applicable policy statement[].'").

---

[2] The United States Sentencing Commission recently adopted a new § 1B1.13 policy statement, which became effective on November 1, 2023. At least one district court in this circuit has applied the new statement, notwithstanding that the motion in that case was filed in February 2023. *See United States v. Penniegraft*, No. 1:08CR231-2, 2024 WL 328716, at *2 n.3 (M.D.N.C. Jan. 29, 2024) (finding that the new policy statement did not "adversely affect [defendant]'s avenues for relief"); *see also* USSG § 1B1.11(b)(1)-(2) (barring the use of the manual in effect on the date of sentencing if it would violate the *ex post facto* clause, and requiring application of manual "in its entirety"). In this case, the 2023 policy statement does not appear to narrow the range of possible extraordinary and compelling reasons; nevertheless, Defendant's motion was filed well before the new policy statement's effective date and, thus, the court will apply the 2021 version of the USSG manual in effect at the time of the motion's filing and will consider the full range of extraordinary and compelling reasons available under *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020).

4

However, the Fourth Circuit has also recognized that Section 1B1.13, "though issued before Congress authorized defendant-filed motions, 'remains helpful guidance even when motions are filed by defendants'" for defining medical conditions that may serve as extraordinary and compelling reasons for a sentence reduction. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting *McCoy*, 981 F.3d at 282 n.7); *see also United States v. Hargrove*, 30 F.4th 189, 197-98 (4th Cir. 2022) (approving consideration of § 1B1.13, BOP Program Statement 5050.50, and other factors). Moreover, the appellate court has determined that "the district court may consider any extraordinary and compelling reasons raised by the defendant as well as review § 1B1.13 to determine whether there is a sufficient 'extraordinary and compelling circumstance' warranting a sentence reduction." *United States v. Jenkins*, 22 F.4th 162, 169–70 (4th Cir. 2021); *see also McCoy*, 981 F.3d at 284 ("district courts are 'empowered ... to consider *any* extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted) (emphasis in original).

A defendant who seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing that such relief is warranted. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). The court may deny a defendant's motion based on its consideration of the applicable § 3553(a) factors, even if extraordinary and compelling circumstances exist. *See Kibble*, 992 F.3d at 331-32. Notably, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

### III.    Analysis

Based on the requirements of § 3582(c)(1)(A), Defendant's motion requires the court to consider (1) whether she exhausted her administrative remedies; (2) if so, whether extraordinary and compelling reason(s) exist warranting a reduction of her sentence; and (3) if so, what, if any,

5

sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors. The parties agree and the record reflects that Defendant has exhausted her available administrative remedies.

### A. Extraordinary and Compelling Reason Under § 3582(c)(1)(A)

To establish that the risk posed by COVID-19 presents an extraordinary and compelling reason for release, Defendant must demonstrate that "the risk of contracting COVID-19 is higher in prison than outside of it, and that [her] preexisting conditions increase the risk of experiencing a serious or fatal case of the virus." *United States v. Davis*, 99 F.4th 647, 655 (4th Cir. 2024) (citing *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023)). "[C]ourts [must] examine whether the movant 'shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility.'" *Id.* (quoting *Hargrove*, 30 F.4th at 196). The court's "inquiry is multifaceted and must account for the totality of relevant circumstances." *Id.*

This court acknowledges the many physical and mental health conditions from which Defendant suffers, including those that the Centers for Disease Control (CDC) determined may increase a risk of serious illness from COVID—asthma, cardiomyopathy, obesity, substance abuse, and mental health conditions.[3] However, in her status report, filed June 13, 2024, Defendant advises that she was transferred from the facility at which she resided when she filed the present motion, FCI Aliceville, to FPC Alderson, on April 23, 2024. DE 936-1. While Defendant provides updated information concerning the BOP's treatment (or lack thereof) of her medical conditions,

---

[3] *See* https://www.cdc.gov/covid/risk-factors/?CDC_AAref_Val=https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited October 16, 2024. Defendant also stresses the problems she has had with gastroenterological and gynecological conditions, but she does not explain how these increase her risk of becoming seriously ill if she were to contract COVID-19 again.

6

she mentions nothing in her report about any risk of serious illness from contracting COVID-19 at FPC Alderson. *See id.* The court finds Defendant's transfer undercuts her original argument that she is exposed to a risk of serious illness from COVID-19 at FCI Aliceville. *See United States v. Moore*, No. 316CR00202FDWDSC, 2021 WL 5147992, at *2 (W.D.N.C. Nov. 4, 2021) ("Defendant's transfer out of Butner has alleviated his concerns about his particular vulnerability to contracting COVID-19 within that facility, and he has not submitted any additional argument or evidence on the prevalence or risk of COVID-19 cases at the new facility where he is serving his sentence."); *United States v. Graham*, No. 312CR00188FDWDSC, 2022 WL 1632168, at *3 (W.D.N.C. May 23, 2022), *aff'd*, No. 22-6653, 2023 WL 6458849 (4th Cir. Oct. 4, 2023) (noting defendant's transfer and finding, "there is nothing within the record describing Defendant's particularized risk of contracting the disease at his new prison facility.").

Even if Defendant had argued that she is similarly exposed to a risk of serious illness at FPC Alderson, the evidence reflects that Defendant suffered from her medical conditions *before* she filed the present motion, during which time she was incarcerated in state facilities and contracted COVID-19 *twice*. Nothing indicates that Defendant became seriously (or, even, moderately) ill during these episodes. Moreover, Defendant was 47 years old at the time she filed her motion; her relatively young age coupled with the fact that she has not become seriously ill from two bouts of COVID-19 serve to undermine her claim that she is "especially susceptible to serious illness from the pandemic." *See Davis*, 99 F.4th at 655. The court also notes that FPC Alderson, with an inmate population of 680, currently reports no open cases of COVID and two COVID-related deaths. *See* https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp, last visited Oct. 17, 2024. Defendant has failed to show that her preexisting conditions increase the risk that she may experience a "serious or fatal case" of COVID-19. *Davis*, 99 F.4th at 655.

7

Notwithstanding this obstacle, Defendant appears to argue that the BOP's failure to treat her conditions, itself, constitutes an extraordinary and compelling reason to reduce her sentence.[4] Defendant cites a myriad of cases in which certain courts have found conduct by BOP staff "grossly inadequate" in treating inmates with metastatic cancer, strokes, aneurysms, and diseases leading to blindness, and other inmates incapable of providing self-care. *See* DE 836 at 3-5. Although Defendant, no doubt, suffers from her ailments, nothing in the record reflects her inability to care for herself and none of her impairments currently appear to be urgent or life-threatening; thus, the cases she cites are materially distinguishable. For example, in *United States v. Beck*, 425 F. Supp. 3d 573, 580-82 (M.D.N.C. 2019), the court found that significant delays by medical personnel at FCI Aliceville (the facility at which Defendant resided at the time she filed her motion) in treating known "invasive" breast cancer that had spread to the defendant's lymph nodes and subsequently appeared in the defendant's other breast after a months-long delay of chemo or radiation therapy, justified reducing the defendant's sentence.

Here, Defendant points to the BOP's "delay" in treating her for an "abnormal" pap smear during which precancer cells were detected on her cervix, for a gastroenterological problem causing her to vomit every day, and for rectal bleeding during which she lost a pint of blood. Defendant claims that her transfer in April 2024 resulted in the need to "start over again" with the treatment process for her gynecological and gastroenterological issues. In her status report, dated June 3, 2024, Defendant asserts that she was approved on May 2, 2024, for a gynecology appointment and was taken to the appointment on May 21, 2024, at which she underwent another

---

[4] Defendant acknowledges that movants may not use compassionate release motions to challenge the validity or execution of a defendant's conviction or sentence. DE 836 at 6 (citing *United States v. Ferguson*, 55 F.4th 262, 272 (4th Cir. 2022)); *see also United States v. Al-Shabazz*, No. CR 3:19-986-JFA, 2024 WL 4045860, at *1 (D.S.C. Sept. 4, 2024) ("defendant cannot use § 3582(c)(1)(A) to sidestep § 2241") (citing *Ferguson*, 55 F.4th at 270).

8

Case 5:21-cr-00434-M    Document 990    Filed 10/21/24    Page 8 of 13

pap smear. Notably, after her prior pap smear in December 2023, medical staff scheduled her for a subsequent test in December 2024. At the time of her status report two weeks later, Defendant was awaiting results. Regarding her gastroenterological issues, Defendant saw a doctor on May 7, 2024, and under his order, she had x-rays done on May 9, 2024. The doctor ordered other tests, including CT scans, a colonoscopy, and a GI/surgical consultation. At the time of her June 3 status report, she was awaiting these results/tests. Finally, Defendant states that she went to sick call on May 14, 2024, due to "recurrent rectal bleeding" and returned on May 28, 2024, when it had gotten worse; she was seen and checked on May 30, 2024, and learned that she had lost a pint of blood in the previous sixteen days. The nurse informed Defendant she would notify the doctor and advised that Defendant was "pending approval" for a GI consultation and colonoscopy. Four days later, at the time of her status report, she was awaiting these procedures. The court has received no further information from Defendant. The court finds, under the circumstances presented, that any "delay" in Defendant's treatment does not rise to the level of extraordinary and compelling required under § 3582(c)(1)(A).

Defendant also points to the Sentencing Commission's November 2023 amendments to § 1B1.13(b), found in subsections (1)(C) and (5), for support of her argument that her sentence should be reduced. Section 1B1.13 provides the Commission's policy statement concerning requests for sentence reductions under § 3582(c)(1)(A), and subsection (b) describes "extraordinary and compelling" reasons. Subsection (1)(C) states: "The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Assuming the November 2023 policy statement were applicable, as set forth above, the court finds Defendant has failed to meet this definition. Similarly, subsection (5) provides, "The defendant

9

presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." Again, Defendant has argued that the lack of treatment for her conditions coupled with the risk of contracting COVID-19 a third time constitutes extraordinary and compelling circumstances but, as set forth herein, the court disagrees. Defendant presents no other argument or evidence.

In sum, this court finds Defendant fails to establish an extraordinary and compelling reason to grant her compassionate release under § 3582(c)(1)(A).

B.  Consideration of the § 3553(a) Factors

Although not required to do so,[5] the court also finds that consideration of the factors set forth in 18 U.S.C. § 3553(a) weighs against granting Defendant's motion at this time. Section 3553(a) requires that a "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." In determining whether such purposes have been fulfilled with respect to the present motion, the court should consider, *inter alia*, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other

---

[5] The Fourth Circuit has instructed that a district court must consider § 3553(a) factors if it "***first*** finds that 'extraordinary and compelling reasons warrant such a reduction.'" *Jenkins*, 22 F.4th at 170 ("***If*** a district court finds that a defendant has demonstrated 'extraordinary and compelling reasons' for release, it must ***then*** consider the § 3553(a) sentencing factors 'to the extent that they are applicable'") (emphasis added).
10

correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a); *see also Jenkins*, 22 F.4th at 170.

Here, the record reflects that Defendant has seized opportunities at the BOP to enrich herself by working, enrolling in treatment programs, and completing educational classes, and the court commends Defendant for her choices to do so. However, the undersigned has presided over this multi-defendant action from its inception, including a five-day jury trial at which Defendant testified, and finds Defendant's offense conduct significant: over the course of at least one year, she served as both a courier and distributor of methamphetamine in a substantial drug and firearms trafficking ring and was held accountable for 13.44 kilograms of crystal methamphetamine or "Ice," 108 grams of heroin, 63 grams of cocaine, and 17 grams of mushrooms containing Psilocin and/or Psilocybin (wet). PSR, DE 600 at 26. Additionally, Defendant possessed multiple firearms in connection with her offenses, and she maintained a premises for the purpose of drug distribution. *Id.* This conduct reflects Defendant's concerning lack of consideration for the lives and well-being of others, as well as her disrespect for the law. The court finds that Defendant's history and offense conduct strongly implicate the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)–(B).

On January 30, 2023, this court departed significantly downward[6] and sentenced Defendant to 132 months in prison. J., DE 668. Defendant asserts that she has served only approximately 30% of that sentence. The court has fully considered the § 3553(a) factors and concludes that the purposes of Defendant's sentence remain unfulfilled.

---

[6] Defendant was facing a guidelines imprisonment range of 210-262 months. PSR ¶ 136, DE 600.

11

Case 5:21-cr-00434-M     Document 990     Filed 10/21/24     Page 11 of 13

## IV. Conclusion

The court acknowledges the difficulties surrounding the proper response to a global pandemic in the prison setting, suffered by both the inmates and the prison system. While the system appears to be doing its best to control and remediate the spread of COVID-19, thousands of inmates across the country have contracted the virus and many have suffered severe symptoms, complications, and death. However, the same is true for non-incarcerated individuals; thus, the potential for an inmate to contract COVID-19 and possibly suffer serious illness is not itself an extraordinary and compelling reason for a sentence reduction.

Here, Defendant's transfer to another facility undercuts her argument that she is at risk of serious illness if she were to contract COVID-19 at her previous facility. Even considering her circumstances at the new facility, the record indicates that Defendant has, according to the CDC, a higher risk of suffering serious illness if she were to contract COVID-19, but, as someone who contracted COVID-19 twice while incarcerated without suffering severe (or, even, moderate) symptoms, Defendant has not shown a particular risk of serious illness if she were to contract the virus at her new facility. Moreover, the circumstances Defendant presents of the BOP's "delay" in treating her medical conditions do not rise to the "exceptionally high" standard and, thus, Defendant does not demonstrate an extraordinary and compelling reason to warrant a reduction of her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

Notably, Defendant has enriched herself by working and taking educational classes while incarcerated. She also has committed no infractions while incarcerated. The court commends Defendant and hopes that she commits to being and remaining a law-abiding citizen regardless of the court's decision on this matter. The court also recognizes that Defendant engaged in serious

criminal conduct over the course of at least one year in a substantial drug and firearms trafficking ring. This conduct resulted in an eleven-year sentence, for which Defendant has not yet fulfilled the purposes set forth in 18 U.S.C. § 3553(a).

For these reasons, Defendant's motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A) [DE 788] is DENIED. The court notes that this decision is based solely on the evidence currently before it and does not foreclose the Defendant's ability to file a subsequent motion should the circumstances justify it.

SO ORDERED this 21st day of October, 2024.

Richard E. Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE